IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Robert J. HYNDMAN, Attorney at Law.

Supreme Court

*No. 88-1616-D. Filed May 11, 1989.*

(Also reported in 439 N.W.2d 129.)

PER CURIAM. *Attorney disciplinary proceeding; attorney's license revoked.*

We review the report of the referee recommending that the license of Robert J. Hyndman to practice law in Wisconsin be revoked as discipline for professional misconduct based on findings of fact and conclusions of law set forth in that report. The misconduct consisted of Attorney Hyndman's neglect of six legal matters and his dishonesty, deceit or misrepresentation to his clients in them, commingling of personal and client

funds, failure to maintain complete records of client funds in his possession and promptly pay those funds to clients upon request, filing of a false certificate concerning his client trust account, misrepresentation of his practice as being in a partnership, failure to promptly deliver client papers to successor counsel following his discharge and engaging in the practice of law in violation of the court's rules.

The referee also made findings and conclusions concerning alleged criminal conduct of Attorney Hyndman but it is not necessary to address those findings and conclusions in order to determine that license revocation is appropriate discipline for the acts of misconduct detailed below. That alleged criminal activity is currently the subject of a criminal action pending against Attorney Hyndman in circuit court.

On the basis of the referee's findings of fact and conclusions of law, which we hereby adopt, we determine that Attorney Hyndman has shown himself unfit to be entrusted with the representation of others in our legal system and, accordingly, his license to practice law in the state should be revoked. He repeatedly failed to do that for which he had been retained and then misrepresented to clients what he had done in the course of their representation in order to conceal from them his neglect of the legal matters they had entrusted to him. He retained funds and property of clients to which they were entitled, commingled client funds with his own and refused to return client property upon demand. He also made false statements to the court's board charged with administering the rules of continuing legal education for lawyers. The referee deemed this misconduct of sufficient seriousness as to warrant the revocation of Attorney Hyndman's license to practice

law, independent of the alleged criminal conduct; we agree.

Attorney Hyndman was licensed to practice law in Wisconsin in 1977 and practices in Milwaukee. He has not previously been the subject of an attorney disciplinary proceeding. On the basis of Attorney Hyndman's plea of no contest, entered pursuant to SCR 22.12(2), to the allegations of misconduct in the complaint of the Board of Attorneys Professional Responsibility, the referee, Attorney Stewart G. Honeck, made the following findings of fact in regard to seven separate matters.

(1) In 1986 Attorney Hyndman undertook to represent an insurer's subrogated interest in a personal injury action. Attorney Hyndman received a $500 check in settlement of the claim and had the insurer endorse the check, which he then deposited into the business account, not a trust account, he maintained under his name and the name of a former law partner. During this time, Attorney Hyndman used letterhead stationery indicating a partnership with that lawyer, maintained his business account in their names and certified to the State Bar under SCR 11.05(3)[1] that the business account was his client trust account, notwithstanding that he had not practiced with the other attorney since mid–1984.

Within four days of the deposit of the insurer's funds, the entire balance in the business account was depleted by virtue of Attorney Hyndman's having issued business checks other than to the insurer and as a result of a garnishment action against him. Thereafter, the insurer made numerous attempts to contact him to request payment of the funds, to the extent of

---

[1]The corresponding rule of the Rules of Professional Conduct for Attorneys is SCR 20:1.15(g).

hiring a collection agency to pursue the matter, but Attorney Hyndman did not reply to those communication and collection efforts. After the client filed a grievance with the Board of Attorneys Professional Responsibility, he paid the client the funds in January of 1988, some two years after the client was entitled to receive them.

(2) In 1985 Attorney Hyndman was retained to represent a company in an action against a subcontracting firm for money owed. The client paid him a retainer and turned over documents so that he might commence a legal action. In September, 1985, Attorney Hyndman wrote to the client that he had obtained a judgment on the company's behalf and that the debtor was attempting to have that judgment set aside and to reopen the matter.

After receiving that letter, the client made numerous attempts to contact Attorney Hyndman by letter and by telephone to determine the status of the judgment, but Attorney Hyndman did not reply. In August, 1987, the client sent him a certified letter requesting information concerning the matter, but Attorney Hyndman did not respond. After filing a grievance with the Board in August, 1987, the client learned that Attorney Hyndman had never filed an action against the subcontracting firm and that, while Attorney Hyndman was retained, the statute of limitations on the client's claim had run.

(3) Attorney Hyndman was retained in August of 1984 to commence an action against a company for improper installation of material in his clients' home. The clients paid him $750 toward his fees in the matter and turned over their documents to him. Between the spring of 1985 and the fall of 1986, the clients placed numerous telephone calls to Attorney Hyndman to

learn the status of the matter. On the few occasions Attorney Hyndman replied, he told them that the case was proceeding.

In early 1986, the clients told Attorney Hyndman they intended to file a grievance against him concerning the lack of progress in the matter. In response, Attorney Hyndman stated he had obtained a judgment on the clients' behalf. In March, 1986, he had his secretary prepare an "affidavit of summary judgment" for the clients' signature. Believing a judgment had been obtained, the clients signed the affidavit in the presence of the secretary as a means of verifying their damages.

In the fall of 1986, the clients learned that Attorney Hyndman had never filed an action on their behalf. The clients hired other counsel to represent them in the matter and that attorney made several attempts to obtain the clients' file from Attorney Hyndman by writing letters, issuing a discovery subpoena and filing a contempt motion. Attorney Hyndman ultimately turned over the file nine months after first requested to do so.

(4) In November, 1985 a man retained Attorney Hyndman to represent him on a charge of operating a motor vehicle after revocation, for which he paid a $375 fee. He informed Attorney Hyndman of the date set for trial, but Attorney Hyndman failed to appear on that date, as a result of which a default judgment was entered against the client. Attorney Hyndman was successful in having the case reopened and a new trial date set, but he failed to appear at the rescheduled trial and a second default judgment was entered against the client.

Subsequently, the client received a notice of the default judgment and was told he would be required to pay a $240 forfeiture or face a license suspension.

Attorney Hyndman advised the client not to pay the forfeiture, as he would straighten the matter out. In October and November of 1986, Attorney Hyndman told the client that he had spoken with a city attorney concerning the reopening and dismissal of the case and that a judge would be making a decision in the matter soon. The client subsequently learned that Attorney Hyndman had never had the case reopened. As a result of Attorney Hyndman's failure to act on his client's behalf, the client's drivers license was suspended.

(5) In February of 1987 Attorney Hyndman was retained by a woman to represent her husband seeking post-conviction and appellate relief, for which she paid him a $500 retainer. The woman also gave Attorney Hyndman the documents related to the case, including a notice of intent to pursue post-conviction relief that had been filed in the trial court by her husband's trial counsel.

When retained, Attorney Hyndman informed several members of the client's family that he would file an appeal on the issue of ineffective assistance of counsel, stating that there was no time limit to file that appeal. In June of 1987 he told the family that he was prepared to file the appeal but that he needed additional money. It was then agreed that Attorney Hyndman would hold the client's automobile as collateral to secure payment of legal fees and expenses. The car was turned over to Attorney Hyndman on July 14, 1987; two weeks later he sold the car for $1800 without his client's consent. Despite requests from the client's family, he never provided documents or an accounting from that sale.

Further, Attorney Hyndman never filed a post-conviction motion or a notice of appeal on behalf of the client. When the client subsequently sought counsel from the State Public Defender in the fall of 1987, that

office declined representation on the ground that the time to pursue the client's appeal rights had expired.

(6) In January of 1987 the appellate division of the State Public Defender Office appointed Attorney Hyndman to represent an incarcerated person. By early April, 1987, Attorney Hyndman received the transcripts of the trial proceedings in the case. Between then and November of that year, the client attempted to contact Attorney Hyndman by letter and telephone on numerous occasions and, except for one of them, Attorney Hyndman did not respond. The client also sent numerous letters to the State Public Defender requesting information concerning his case; the State Public Defender, in turn, wrote Attorney Hyndman numerous letters concerning the case, but Attorney Hyndman did not respond.

On the one occasion Attorney Hyndman responded to the client, he said he had filed a motion to vacate the client's sentence and was awaiting a court date. In fact, however, Attorney Hyndman had never filed a post-conviction motion or a notice of appeal on the client's behalf. In November, 1987, the State Public Defender removed Attorney Hyndman from the case, as well as from its list of attorneys certified for appellate representation.

(7) In May, 1988 Attorney Hyndman filed a continuing legal education compliance certificate with the Board of Attorneys Professional Competence on which he represented that he had attended three courses in order to satisfy his continuing legal education requirements under the court's rules. That form was not timely filed and as a consequence Attorney Hyndman was suspended from membership in the State Bar on May 11, 1988 and notified of the suspension on the following day. Subsequent investigation

disclosed that Attorney Hyndman had never attended the three courses listed on his form. In a subsequent filed sworn petition concerning reinstatement to membership in the State Bar, Attorney Hyndman stated that he had not practiced law while suspended from membership in the State Bar when, in fact, he had made at least eight court appearances during that time.

On the foregoing facts the referee concluded as follows: Attorney Hyndman violated SCR 20.50(2)(c) and (d)[2] by failing to maintain complete records of client funds in his possession and by failing to promptly pay them to clients as requested; he engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20.04(4)[3] in six of those matters set forth above and neglected those matters, in violation of SCR 20.32(3);[4] he violated SCR 11.05(1) and (3)[5] and 20.50(1)[6] by commingling personal and client funds and by filing a false trust account certificate with the State Bar; he violated SCR 20.08(3)[7] by misrepresenting that he was in partnership with another lawyer; he violated SCR 20.16(1)(b)[8] by failing to promptly deliver client papers to other counsel after he

[2]The corresponding rule of the Rules of Professional Conduct for Attorneys is SCR 20:1.15(e) and (b).

[3]The corresponding rule of the Rules of Professional Conduct for Attorneys is SCR 20:8.4(c).

[4]The corresponding rule of the Rules of Professional Conduct for Attorneys is SCR 20:1.3.

[5]The corresponding rule of the Rules of Professional Conduct for Attorneys is SCR 20:1.15(a) and (g).

[6]The corresponding rule of the Rules of Professional Conduct for Attorneys is SCR 20:1.15(a).

[7]The corresponding rule of the Rules of Professional Conduct for Attorneys is SCR 20:7.5(d).

[8]The corresponding rule of the Rules of Professional Conduct for Attorneys is SCR 20:1.16(d).

had been discharged; he violated SCR 20:5.5(a) by practicing law while his membership in the State Bar had been suspended when membership in that organization was a condition precedent to the right to practice law.

The referee also made findings of fact and conclusions of law concerning a criminal matter in which Attorney Hyndman was alleged to have engaged. While those findings and conclusions were appropriately based upon Attorney Hyndman's no contest plea, as the allegations concerning that matter had been included in the Board's disciplinary complaint, Attorney Hyndman objected to them in an appeal from the referee's report. He took the position that by pleading no contest he was in effect invoking his constitutional privilege against self-incrimination, as his conduct was the subject of a pending criminal case. He argued that the referee should have deferred acting on that matter until the conclusion of the criminal action.

We find Attorney Hyndman's argument unpersuasive and the appeal without merit, for the rule under which the no contest plea was entered specifies that the referee "shall make a determination of misconduct in respect to each allegation to which no contest is pleaded and for which the referee finds an adequate factual basis on the record." Even so, it is unnecessary to address the alleged criminal matter for the reason that the referee explicitly recommended license revocation as discipline for the other acts of professional misconduct considered herein and we accept that recommendation. Because the alleged criminal conduct could not serve to enhance the severity of discipline we impose on Attorney Hyndman, our consideration of it may await the outcome of the pending criminal proceeding and the need for further action, if appropriate, in the event

Attorney Hyndman seeks reinstatement of his license to practice law.

In addition to accepting the referee's recommendation for discipline in this matter, we also accept his recommendation that Attorney Hyndman be required to make restitution to his clients in the matters set forth above. That restitution amounts to $3425, plus interest at rates specified in the referee's report. Finally, we accept the referee's recommendation that Attorney Hyndman be required to pay the costs of this proceeding.

IT IS ORDERED that the license of Robert J. Hyndman to practice law in Wisconsin is revoked, effective June 1, 1989.

IT IS FURTHER ORDERED that within one year of the date of this order Robert J. Hyndman make restitution to the persons and in the amounts, including interest, specified in the report of the referee in this proceeding.

IT IS FURTHER ORDERED that within six months of the date of this order Robert J. Hyndman pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding.

IT IS FURTHER ORDERED that Robert J. Hyndman comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been revoked.

IT IS FURTHER ORDERED that the appeal filed in this proceeding is dismissed.