IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Thomas M. KELLS, Attorney at Law.†

Supreme Court

*No. 91–1180–D. Submitted on briefs December 1,
1992.—Decided January 11, 1993.*

(Also reported in 493 N.W.2d 723.)

†Motion for reconsideration filed.

For the Board of Attorneys Professional Responsibility there were briefs by *Dennis M. Sullivan* and *Sullivan & Stevenson,* Milwaukee.

For the respondent there was a brief by *Thomas M. Kells,* Tulsa, Oklahoma.

PER CURIAM. *Attorney disciplinary proceeding and petition for license reinstatement; attorney's license revoked and petition denied.*

The Board of Attorneys Professional Responsibility appealed from the referee's report and recommendation in this disciplinary proceeding in two respects: first, the referee was unable to conclude that Thomas M. Kells engaged in the practice of law by assisting his wife in the course of her bankruptcy proceeding; second, the referee recommended that Mr. Kells' license to practice law be suspended for one year as discipline for professional misconduct consisting of engaging in the practice of law while his license was suspended, failing to use rent proceeds to make payments on a mortgage as had been agreed and opening an unauthorized bank account and taking from it corporate funds to which he was not entitled. It is the Board's position that Mr. Kells' misconduct, including his practice of law in assisting his wife in her bankruptcy, warrants the revocation of his license to practice law.

614

We agree. By that conduct, Mr. Kells has again shown that he is unfit to be licensed to represent others in the legal system. Although much of that conduct occurred while his license to practice law was suspended as discipline for misconduct he had engaged in as an attorney, Mr. Kells has demonstrated a willingness to disregard the orders of this court and the laws of this state barring him from the practice of law, as well as a propensity to engage in dishonest and deceitful conduct.

Attorney Kells was admitted to practice law in Wisconsin in 1953 and practiced in Milwaukee. He currently lives in Oklahoma. On May 1, 1986 the court suspended his license to practice law for two years as discipline for engaging in conduct involving dishonesty, fraud, deceit or misrepresentation by negotiating checks in settlement of a client's claim, depositing the proceeds into his personal checking account and using the funds for his personal use, failing to maintain a client trust account, failing to deposit those settlement proceeds in a trust account and promptly notify his client's assignee of the receipt of the funds, neglecting a client's legal matter, failing to respond to inquiries from the Board in its investigation of a grievance and engaging in the practice of law while suspended from practice for failure to comply with continuing legal education requirements. *Disciplinary Proceedings Against Kells,* 129 Wis. 2d 121, 384 N.W.2d 347 (1986).

Although Mr. Kells filed a petition for reinstatement of his license on June 9, 1989, that petition has not been acted upon, pending a recommendation from the Board of Bar Examiners. That Board had previously recommended that the petition be granted on the basis of Mr. Kells' compliance with continuing legal education requirements established by the Board but it withdrew that recommendation on January 10, 1990 for the reason

615

that sufficient time had passed without Mr. Kells' being reinstated to require additional continuing legal education before the Board would again recommend his reinstatement. Also, after the Board of Attorneys Professional Responsibility filed its adverse recommendation on license reinstatement on May 3, 1990, Mr. Kells submitted a statement that he would file a written response to that recommendation but he has not done so. We dispose of the license reinstatement proceeding in conjunction with this appeal, denying the petition on the basis of Mr. Kells' conduct during the period of license suspension.

Pursuant to a stipulation of the parties in this proceeding, the referee, Attorney S. Michael Wilk, made the following findings of fact. In September, 1986, shortly after Mr. Kells' two-year disciplinary license suspension went into effect, a couple responded to a newspaper advertisement offering to purchase real estate and contacted William Judge, a real estate broker, telling him they were interested in selling income property they owned.

Soon thereafter, Mr. Kells and Mr. Judge formed a corporation to purchase the couple's property. Mr. Kells and Mr. Judge were the sole shareholders and officers of that corporation and Mr. Kells drafted its articles of incorporation, in which he stated that Mr. Judge had drafted them. He then gave those articles to Mr. Judge and his attorney for review.

Mr. Kells telephoned the sellers to confirm the terms of sale to the corporation. Pursuant to those terms, the sellers were to deed the property to the corporation in exchange for the corporation's assumption of an outstanding mortgage loan. Mr. Kells then drafted an offer to purchase, which he sent to the sellers and they in turn signed and returned to the corporation. That offer

was explicitly contingent on the corporation's being permitted to assume the mortgage.

The sellers subsequently received, signed and returned a warranty deed, a real estate transfer form, a mechanic's lien affidavit and a mortgage assumption agreement. The assumption agreement, which Mr. Kells had drafted, provided that the corporation would assume and pay the $75,500 balance on the mortgage note, commencing November 1, 1986. The sellers understood that the corporation would assume legal responsibility for the mortgage and that they were relinquishing all right to and responsibility for the real estate, including their liability on the mortgage note.

Mr. Kells and Mr. Judge did not immediately file and record the warranty deed and transfer form, nor did they contact the mortgage lender regarding assumption of the mortgage. As a result, the mortgagee initially was unaware of the sale of the property and had not approved the mortgage assumption.

In November, 1986 the corporation began collecting $915 monthly rents from the property but made no payment on the mortgage. Between November, 1986 and June, 1987 the corporation collected a total of $7,320 in rent, which Mr. Kells and Mr. Judge shared, with Mr. Kells receiving rent payments for two months and a portion of a third—a total of $2,280. In addition to the rents they collected, Mr. Kells and Mr. Judge obtained from the sellers the tenants' security deposits—$1,365.

In December, 1986 the sellers were notified by the mortgagee that their loan was in default. Shortly thereafter, they telephoned Mr. Kells, who advised them to mail that notice to him. When the sellers received a notice informing them that the mortgagee was foreclosing on the property, they telephoned the corporation and spoke to Mr. Judge, who told them Mr. Kells was an

attorney and would represent their interests in the matter. Mr. Kells, however, was not aware of that conversation and himself never advised the sellers that he was an attorney or would represent their interests.

A judgment of foreclosure on the property in the amount of $85,400 plus interest was entered against the sellers in July, 1987. Thereafter, between February and June, 1988, Mr. Kells executed a deed to the property from the corporation to Mr. Judge, who, while being investigated by the Wisconsin Department of Regulation and Licensing for his conduct in this matter, had agreed to purchase the property. Ultimately, Mr. Judge paid the mortgage note in full and the sellers were released from their obligation on it.

A second matter concerned Mr. Kells' conduct in respect to a corporation he and Thomas Barrett formed in 1983 to engage in various business projects, including buying, selling and trading property. While Mr. Kells and Mr. Barrett were the sole directors and officers of the corporation, its ownership was equally divided between Mr. Barrett and Mr. Kells' wife. The agreement to form the corporation also established a separate attorney-client relationship under the terms of which Attorney Kells would render legal services to Mr. Barrett and various of his enterprises other than this corporation, for which he would be paid at an hourly rate for a specified number of hours of work per month. Pursuant to that agreement, Attorney Kells represented Mr. Barrett in various legal matters from March 1, 1983 until mid-January, 1984, despite the fact that he knew he was suspended from the practice of law by court rule from December 5, 1983 to February 6, 1984, for failure to comply with continuing legal education requirements.

In late 1983, the corporation sold a motel to Mr. Patel on land contract but that contract was terminated

shortly thereafter. The corporation then conveyed a one-quarter interest in the motel to Mr. Patel, with Mr. Barrett and Mrs. Kells each retaining an equal share of the remaining interest. Mr. Patel managed the motel and Mr. Kells was responsible for its general operation.

Mr. Patel used a portion of the motel's income for operating expenses and paid the balance to Mr. Kells on behalf of the corporation; the corporation in turn made payments on the land contract with the former owner. Mr. Kells deposited the money he received from Mr. Patel into the corporation's checking account but Mr. Barrett withdrew most of those funds and used them for another of his enterprises.

On May 20, 1984, Mr. Kells, who by this time was no longer providing legal representation to Mr. Barrett or his businesses, came to believe that Mr. Barrett was not paying the motel's obligations with the money he had been depositing in the corporation account but was using those funds for personal, unrelated purposes. On the basis of his experience in dealing with Mr. Barrett, Mr. Kells believed, in his words, "there was nothing to do but try and stay even with him." Mr. Kells then deposited the next eight checks he received from Mr. Patel from the motel's operation into a corporate account he opened in another bank without Mr. Barrett's knowledge. In all, Mr. Kells deposited $52,000 of motel income into the account and then withdrew $51,000, depositing $47,000 of it in the original corporate account and keeping $4,100 without Mr. Barrett's knowledge or consent. Mr. Barrett learned of the second corporate account in November, 1984 and transferred the balance in it to the original account.

In a third matter, in February, 1985, Mr. Kells assisted Kenneth Behling, the president of a real estate firm, in drafting a letter demanding payment from Mr.

Barrett on two promissory notes Mr. Kells had prepared for Mr. Barrett in 1982 while acting as his attorney. The letter, which only Mr. Behling signed, stated that the notes had been assigned to his real estate company, which had them in its possession. In fact, the holder of the notes was Mrs. Kells and she had only orally agreed to transfer and assign them to the real estate company; that oral agreement was never reduced to writing.

In early 1988, Mr. Barrett filed an action against Mr. Behling and his real estate company to recover possession of the notes. Notwithstanding that his license to practice law was under a disciplinary suspension, Mr. Kells drafted an answer to the complaint, which Mr. Behling signed pro se. In that answer, Mr. Kells raised an affirmative defense asserting that the promissory notes were in the possession of a company in Louisiana. In fact, there was only an oral agreement between Mrs. Kells, still the holder of the notes, and that company to transfer and assign the notes; that oral agreement was never reduced to writing, nor were the notes ever physically transferred or assigned to the company.

A fourth matter concerns Mr. Kells' conduct in the course of his wife's bankruptcy proceeding in 1989, in which Mr. Barrett filed an adversary complaint naming Mrs. Kells as defendant. During the course of the bankruptcy proceeding, Mr. Kells prepared various legal documents for his wife, including the bankruptcy petition, a motion for a protective order and accompanying affidavit, a document entitled "Defendant's Objection to Plaintiff's Amendment of the Complaint" and supporting affidavit, interrogatories to the plaintiff and a motion for an order compelling the plaintiff to answer the interrogatories.

Mr. Barrett's attorney objected to Mr. Kells' assisting his wife, which the bankruptcy court addressed in an order of November 15, 1989, as follows:

> With respect to Mr. Kells' participation, he may participate to the extent that any spouse of a pro se debtor would. For example, a debtor's spouse who happened to be an electrician would probably collaborate with his or her spouse on written documents and strategy. It would, however, be improper for anyone to prompt a deponent with answers, regardless of occupation. It does not make sense to say because Mr. Kells is not licensed to practice law, he may not speak to his wife about the case or look at documents she is going to file with the court.

Mr. Barrett's attorney raised no further objection and Mr. Kells said he understood that the court order allowed him to assist his wife in preparing legal papers. At some point, Mr. Kells telephoned the resolution counsel of the Board of Attorneys Professional Responsibility concerning his role in his wife's bankruptcy and was told he should not represent his wife in the proceeding.

At the close of the bankruptcy proceeding, Mr. Kells sought to recover payment for the assistance he had given his wife. He submitted an affidavit to the court stating that he had provided 187.8 hours of service, for which he sought payment at a rate of $100 to $150 per hour, for a total fee of between $18,780 and $28,170.

On the basis of these facts, the referee concluded as follows. In the first matter, Mr. Kells engaged in the practice of law while his license was suspended by the court when he drafted various legal documents, including the corporation's articles of incorporation, the offer to purchase and the mortgage assumption agreement. Further, he engaged in conduct involving dishonesty, fraud,

621

deceit or misrepresentation, in violation of former SCR 20.04(4),[1] by failing to make payments on the sellers' mortgage note and by setting forth in the articles of incorporation that Mr. Judge had drafted the articles.

In the second matter, the referee concluded that Mr. Kells practiced law by representing Mr. Barrett in various matters between December, 1983 and January, 1984, while under an administrative suspension for failing to comply with continuing legal education requirements. Further, he engaged in conduct involving dishonesty, fraud, deceit or misrepresentation by opening an unauthorized corporate account in connection with the motel operation and taking corporate funds from that account for his own benefit.

In the third matter, the referee concluded that Mr. Kells practiced law while under a disciplinary suspension by drafting an answer to a lawsuit and engaged in conduct involving dishonesty, fraud, deceit or misrepresentation by setting forth inaccurate information in that answer and in the demand letter he prepared for Mr. Behling regarding the possession of the promissory notes. As to the fourth matter, the referee said he was "unsure" whether Mr. Kells engaged in the practice of law by assisting his wife in her bankruptcy proceeding.

In his discussion of the discipline to be recommended for that misconduct, the referee expressed principal concern with Mr. Kells' conduct in the purchase of the mortgaged property—after he became aware that the mortgage note was not being paid and the seller's were

---

[1] Former SCR 20.04 provided:

**Misconduct.**

A lawyer shall not:
. . .
   (4) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

being sued for default, he continued to take and keep rental proceeds from the property. The referee said, "It is reprehensible that Respondent accepted the benefit of the rental payments with knowledge that the mortgage debt was not being paid." The referee also considered Mr. Kells' conversion of $4,100 of corporate funds evidence of his willingness to actively engage in dishonesty, deceit and misappropriation and that his actively practicing law while his license was suspended and his misrepresentations in the demand letter and the answer he drafted on Mr. Behling's behalf demonstrated "a disregard and disrespect for the legal profession." The referee further stated his belief that, in each case, Mr. Kells received "some sort of benefit, either by enhancing the corporation he was involved with, protecting the financial interests of his wife, or enhancing his own position."

As discipline for the professional misconduct he concluded Mr. Kells had engaged in, the referee recommended that Mr. Kells' license to practice law be considered suspended for a period of one year. That recommendation did not advert to the fact that Mr. Kells' license is currently suspended, as it has not been reinstated following the two-year suspension the court imposed in 1986. Consequently, it is not clear when the referee intended that the recommended suspension commence. We need not consider that question, however, as we determine that Mr. Kells misconduct warrants revocation of his license.

The first issue raised in this appeal is whether, by preparing numerous legal documents for his wife in her bankruptcy proceeding, Mr. Kells engaged in the practice of law while his license was under disciplinary suspension. The Board took the position that the referee should have concluded that Mr. Kells' representation of his wife in the bankruptcy proceeding constituted the

practice of law and, consequently, violated the court's rule, SCR 22.26(2),[2] prohibiting an attorney whose license is suspended from engaging in the practice of law. As the Board noted, the rule makes no exception for the practice of law or law work activity done without compensation or on behalf of friends or relatives.

Furthermore, the Board asserted, the bankruptcy court's order allowing Mr. Kells to assist his wife "to the extent that any spouse of a pro se debtor would" did not supersede the prohibition of SCR 22.26(2). Moreover, in the Board's view, the "sophisticated" nature of the legal documents Mr. Kells prepared exceeded the kind of participation a pro se debtor's spouse would be permitted in a bankruptcy proceeding.

The Board also argued that Mr. Kells' asserted belief that he could represent his wife as he did was not held in good faith, as demonstrated by the fact that he sought court-ordered payment of his services at the conclusion of the proceeding at a rate of $100 to $150 per hour for 187.8 hours of work. This, the Board asserted, is not the kind of participation the spouse of a pro se debtor would have in a bankruptcy proceeding, nor would that spouse seek court-ordered payment for the participation. The Board also pointed out that the documents Mr. Kells prepared set forth legal arguments, including extensive citations to state and federal

---

[2] SCR 22.26 provides:

**Activities on revocation or suspension of license.**

. . .

(2)   A suspended or disbarred attorney may not engage in the practice of law or in any law work activity customarily done by law students, law clerks or other paralegal personnel, except that he or she may engage in law related work for a commercial employer not itself engaged in the practice of law.

law—not the kind of assistance the spouse of a pro se debtor would be in a position to provide.

The Board contended that Mr. Kells' itemized services submitted in his affidavit to the bankruptcy court established that it was he who was directing and controlling his wife's case as her attorney: he drafted the adversary answer, interrogatories, a motion to compel discovery, objections to an amended complaint, a motion for protective order, an answer to the amended complaint, a trial brief and a brief seeking sanctions; also, he conferred with opposing counsel, drafted letters to the court and attended court conferences and hearings. Finally, the Board argued that Mr. Kells' bad faith is evidenced by the fact that, when he inquired about his role in the bankruptcy proceeding, Board resolution counsel told him he should not represent his wife in it.

We agree with the Board that the record supports the conclusion that the assistance Mr. Kells provided his wife in the bankruptcy proceeding constituted the practice of law. As a consequence, because his license to practice law was under disciplinary suspension, Mr. Kells violated SCR 22.26(2).

On the issue of appropriate discipline to impose for Mr. Kells' misconduct considered in this proceeding, we find it necessary to distinguish between the conduct that occurred prior to his 1986 license suspension and the conduct occurring thereafter. The former constitutes professional misconduct, for it occurred while Mr. Kells was licensed to practice law, and subjects him to discipline. The latter, however, occurring while his license was under disciplinary suspension, bears directly on his character and fitness to have that license reinstated. Neither the referee nor the Board, in this appeal, made that distinction.

Applying that distinction, we determine that the conduct Mr. Kells engaged in while licensed to practice law—continuing to practice law on behalf of a client for a two-month period during which he was barred from practice for failing to comply with the court's continuing legal education requirements and his surreptitiously opening a corporate bank account, to which he diverted corporate funds and from which he converted funds to his own use—warrants revocation of his license to practice law. Notwithstanding that the funds Mr. Kells took for his own use were not client funds, as he was not acting as attorney for the corporation, his misappropriation constituted dishonest conduct and, as such, violated SCR 20:8.4(c).[3] The remainder of his misconduct considered in this proceeding, which he engaged in following the disciplinary license suspension we imposed in 1986, warrants our determination that Mr. Kells lacks the requisite character and fitness to have his license reinstated from that suspension and again be entrusted with the representation of others in the legal system.

In respect to the issue of his assistance in his wife's bankruptcy proceeding, we are unpersuaded by Mr. Kells' argument that, because the bankruptcy court permitted him to participate "to the extent that any spouse of a pro se debtor would," that assistance could not constitute the practice of law. Mr. Kells mistakenly framed the issue as one of this court's authority or jurisdiction to determine who is allowed to practice in federal courts

---

[3] SCR 20:8.4 provides:

**Misconduct**

It is professional misconduct for a lawyer to:

. . .

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

626

in Wisconsin, although he correctly asserted that the determination is for the federal courts to make. The issue before us is whether the assistance Mr. Kells gave his wife in that proceeding constituted the practice of law, thereby rendering his activity a violation of the court's rules prohibiting an attorney whose license is suspended from engaging in the practice of law. That determination is for this court to make and we have done so.

We do not consider Mr. Kells arguments in his brief contesting the referee's conclusions in respect to his conduct other than that connected with his wife's bankruptcy proceeding. The Board did not appeal from those conclusions and, as Mr. Kells did not cross-appeal from the referee's report, those arguments are not properly before the court.

IT IS ORDERED that the license of Thomas M. Kells to practice law in Wisconsin is revoked, effective the date of this order.

IT IS FURTHER ORDERED that the petition filed June 9, 1989 seeking the reinstatement of the license of Thomas M. Kells to practice law in Wisconsin is denied.

IT IS FURTHER ORDERED that within 60 days of the date of this order Thomas M. Kells pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding.

IT IS FURTHER ORDERED that Thomas M. Kells comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been revoked.