In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Robert J. HYNDMAN, Attorney at Law:

BOARD OF ATTORNEYS PROFESSIONAL RESPONSIBILITY,
n/k/a Office of Lawyer Regulation, Complainant,

v.

Robert J. HYNDMAN, Respondent.

Supreme Court

*No. 88–1616–D. Filed January 23, 2002.*

2002 WI 6

(Also reported in 638 N.W.2d 293.)

650

651

¶ 1. PER CURIAM Effective June 1, 1989, this court revoked Robert J. Hyndman's license to practice law in this state for professional misconduct consisting of his neglect of legal matters and his dishonesty, deceit or misrepresentation to his clients, commingling of personal and client funds, failure to maintain complete records of client funds in his possession and promptly pay those funds to clients upon request, filing a false certificate concerning his client trust account, misrepresentation of his practice as being a partnership, failure to promptly deliver client papers to successor counsel, and engaging in the practice of law in violation of this court's rules. *Disciplinary Proceedings Against Hyndman,* 149 Wis. 2d 487, 439 N.W.2d 129 (1989). At the time of that prior disciplinary proceeding, Attorney Hyndman had been charged but not then convicted of criminal acts. In response to Hyndman's objection that this court in the context of the disciplinary case should not consider the then-pending criminal matter, this court agreed that it was unnecessary to address the pending criminal charge because the referee had recommended license revocation as discipline for Hyndman's other acts of professional misconduct and there was no more severe sanction available. This court asserted, however, that it could, in the future if appropriate, consider the criminal matter if Hyndman were to seek reinstatement of his license to practice law. *Id.* at 495–96.

¶ 2. Following this court's decision revoking his license to practice law, Hyndman was convicted on the

criminal charge of solicitation to commit a felony, delivery of cocaine. Hyndman received a 30–month sentence for that conviction. That conviction was affirmed in *State v. Hyndman,* 170 Wis. 2d 198, 488 N.W.2d 111 (Ct. App. 1992). Hyndman served eight months of that sentence and was released on parole in September 1993.

¶ 3. On February 9, 2000, Hyndman filed a petition seeking reinstatement of his license to practice law.[1] A public hearing on Hyndman's petition for rein-

---

[1] Effective October 1, 2000, Wisconsin's attorney disciplinary process underwent a substantial restructuring. Under former SCR 21.11, when a petition for reinstatement was filed, the Board of Attorneys Professional Responsibility was required to conduct an investigation of the moral character of the person and report its findings and recommendations to this court. Under the new attorney disciplinary procedures, the name of the body responsible for investigating and prosecuting cases involving attorney misconduct was changed to the Office of Lawyer Regulation (OLR) and the supreme court rules applicable to the lawyer regulation system, including reinstatement after revocation, were also revised. In this case, because Hyndman's petition for reinstatement was filed before the effective date of the new rules, pursuant to former SCR 22.28(5), this petition for reinstatement was referred to the appropriate professional responsibility committee of the state bar created by former SCR 21.08 for review and report.

After a public hearing and recommendation from a subcommittee, that professional responsibility committee recommended that the petition be granted and Hyndman's license to practice law be reinstated. That report was filed with the director of OLR on October 2, 2000. Under the new provisions of SCR 22.30, a hearing on a petition for reinstatement is to be conducted by a referee. Because this case arose under the old rules but the committee's report was filed under the new rules, the director of OLR filed a report and recommendation with this court agreeing with the district professional responsibility

654

statement was held and the District 2 Professional Responsibility Committee recommended that the petition for reinstatement be granted. The director of OLR agreed that under the totality of the circumstances, Hyndman's license to practice law in this state should be reinstated.

■

¶ 4. Although we agree with the recommendation from the district professional responsibility committee and the director that Hyndman's license be reinstated, we must note our grave concern about Hyndman's criminal activities and his felony drug conviction, factors that were expressly not considered by this court when we revoked his license to practice law in 1989. In past cases we have examined the gravity of the underlying misconduct by the attorney and denied reinstatement. *See Disciplinary Proceedings Against Hersh,* 108 Wis. 2d 450, 321 N.W.2d 927 (1982). We see nothing in our prior attorney disciplinary decisions implying that a petitioner for reinstatement enjoys a presumption of rehabilitation upon the expiration of a specified term of suspension—or in this case upon service of sentence imposed for a criminal conviction—where no evidence of intervening or subsequent misconduct is present. Under the former SCR rules, *see* SCR 22.28(6), as well as the new ones,[2] a petitioner for reinstatement has the

committee's recommendation that under the totality of the circumstances, Hyndman's petition for reinstatement should be granted. The Board of Bar Examiners also filed a memorandum supporting that recommendation. All further references to supreme court rules in this opinion will be to those in effect prior to October 1, 2000, unless specifically noted.

[2] In *Disciplinary Proceedings Against Penn,* 2002 WI 5, 249 Wis. 2d 667, 638 N.W.2d 287, released today, we recognize that a petitioner seeking reinstatement has the burden at the

burden of demonstrating by clear and convincing evidence that he or she possesses the requisite moral character to practice law in Wisconsin and that resumption of practice will not be detrimental to the integrity and standing of the bar or the administration of justice or be subversive of the public interest. *See Disciplinary Proceedings Against Hetzel,* 118 Wis. 2d 257, 268, 346 N.W.2d 782 (1984). At the same time, however, we acknowledge that under former SCR 21.03(5), which was in effect at the time of Hyndman's revocation, it was expressly stated that the imposition of discipline for misconduct is not intended as a punishment for wrongdoing; rather, discipline is imposed to protect the public, the courts, and the legal profession. Our review of the record in this matter now leads us to believe that the petitioner has met his burden and that he can now safely be reinstated to the practice of law in this state. We think that Hyndman's reinstatement and resumption of the practice of law will not endanger the public, the courts, or the legal profession.

¶ 5. The report submitted by the District 2 Professional Responsibility Committee contained the following conclusions supporting its recommendation that Hyndman's license to practice law be reinstated:

hearing held before a referee to demonstrate by clear, satisfactory and convincing evidence that the petitioner has the moral character to practice law in Wisconsin and that his or her resumption of the practice of law would not be detrimental to the administration of justice or subversive of the public interest. To that end, we also recognize that the referee conducting the hearing on the petition for reinstatement may consider the petitioner's past, present, and predicted future conduct and may consider any relevant information presented. *See* SCR 22.31(1) and (5) (effective October 1, 2000).

656

This Petitioner has waited eleven years to petition for reinstatement of his law license. He has been sober for ten years and will be active in AA the rest of his life. He has maintained steady employment, done laudable volunteer work, established a strong, loving family, reconnected with his family of origin and, generally, paid his debt to society. Although he served time in prison and found it necessary to declare bankruptcy, he has made all restitution and has the promise of a job with his brother if his license is reinstated. The witnesses Petitioner presented at the reinstatement hearing were credible and convincing. . . . It is the committee's considered opinion that Robert Hyndman has made significant and lasting life-style changes coupled with an intense desire to resume the practice of law.

¶ 6. As noted, the OLR director agrees and recommends that Hyndman's petition for reinstatement be granted.

¶ 7. Other than noting our concern about the gravity of Hyndman's prior criminal activities as discussed above, we deem it necessary to discuss only one additional area of concern addressed by both the district responsibility committee and the OLR director in his report. The question that was raised, and ultimately resolved in Hyndman's favor, focused on whether Hyndman had been practicing law while under revocation when he represented his employer in replevin actions in small claims court and made appearances at creditors' meetings in federal bankruptcy proceedings where he filed claims on behalf of his employer. Both former and current SCR 22.26(2)[3] proscribe practicing law while

---

[3] SCR 22.26(2) provides:

(2) An attorney whose license to practice law is suspended or revoked or who is suspended from the practice of law may not engage in this state in the practice of law or in any law work

657

under revocation or suspension. The subcommittee of the district responsibility committee which conducted the public hearing on Hyndman's reinstatement petition considered in detail Hyndman's activities on behalf of his employer. One of the members of that committee requested a research memo from an employee of his firm, discussing whether Hyndman's appearances on behalf of his employer in replevin actions in small claims court and at creditors' meetings where Hyndman filed claims on behalf of his employer in bankruptcy proceedings, constituted practicing law within the proscription of the rule. The research memo suggested that Hyndman's activities did, in fact, constitute the practice of law.

¶ 8. The committee, however, rejected that conclusion and instead determined that because the actions Hyndman took on behalf of his employer could be—and frequently were—performed by non-lawyers, his activities fell within the exception in the rule permitting a suspended or revoked attorney to perform "law related work for a commercial employer." Thus, Hyndman had not violated SCR 22.26(2).

¶ 9. We agree. First we note that Wis. Stat. § 799.06 (1999–2000)[4] permits non-lawyers, if an authorized and full-time employee, to appear on behalf of another "person" in small claims actions. In *Jadair Inc. v. United States First Ins. Co.*, 209 Wis. 2d 187, 562 N.W.2d 401 (1997), this court pointed out that this

activity customarily done by law students, law clerks, or other paralegal personnel, except that the attorney may engage in law related work in this state for a commercial employer itself not engaged in the practice of law. (Effective October 1, 2000.)

[4] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

statute, which permits an authorized full-time employee to appear in small claims actions on behalf of an employer, is an exception to the general proscription against practicing law without a license set out in Wis. Stat. § 757.30. The *Jadair* court noted the fiction in Wis. Stat. § 799.06(2) that in a small claims action, the non-lawyer appearing for his or her employer is considered to be the "party" to the action. *Id.* at 198 n.10. *See also Holz v. Busy Bees Contracting, Inc.,* 223 Wis. 2d 598, 589 N.W.2d 633 (Ct. App. 1998), where the court of appeals held that a non-lawyer president of a corporation could file a notice of appeal in a small claims action on behalf of the corporation.

¶ 10. The writer of the research memo submitted to the district committee in this case reasoned that although the activities permitted under Wis. Stat. § 799.06(2) may not constitute practicing law under Wis. Stat. § 757.30, that does not mean that those same activities should not be considered "practicing law" within the prohibition of SCR 22.26(2). In other words, the writer of the research memo took the position that even though a non-lawyer may represent his or her employer in a small claims action under Wis. Stat. § 799.06(2) without violating Wis. Stat. § 757.30, if that non-lawyer is a suspended or revoked attorney, those same acts on behalf of his or her employer would violate SCR 22.26(2). The memo-writer's underlying premise was that actions that may be permissible for non-lawyers, are not permissible for suspended or revoked attorneys because the latter were once licensed to practice law and, consequently, must be held to higher standards.

¶ 11. Likewise, the writer of the research memo concluded that Hyndman's activities on behalf of his employer in the bankruptcy proceedings—even though

Hyndman did not appear before a judge and even though those same activities were also regularly performed by non-lawyers—constituted appearances before a governmental body in an effort to determine the rights of individuals, something this court in *Disciplinary Proceedings Against Eisenberg,* 96 Wis. 2d 342, 344, 291 N.W.2d 565 (1980), held constituted the practice of law within the prohibition of SCR 22.26(2). *See also, Disciplinary Proceedings Against Kells,* 172 Wis. 2d 613, 627, 493 N.W.2d 723 (1993), where this court held that a suspended attorney who had drafted legal documents for his wife in her federal bankruptcy proceedings had been practicing law in violation of SCR 22.26(2). In *Kells,* this court noted the sophisticated nature of the legal documents that had been prepared, as well as the extent of the suspended lawyer's actions on behalf of his wife and viewed them as exceeding the kind of participation a pro se debtor's spouse would normally be permitted to undertake.[5]

¶ 12. We agree with the district professional responsibility committee's conclusion that Hyndman's activities on behalf of his employer while he was under revocation did not constitute the practice of law within the proscription of SCR 22.26(2). First, Hyndman's acts in both the small claims court as well as in the federal bankruptcy proceedings were acts that could be and, in fact, frequently were performed by non-lawyers. If those acts would not constitute practicing law for a

---

[5] In contrast, Hyndman's activities in small claims court and in the creditors' meetings in the federal bankruptcy proceedings could be, and frequently were, performed by non-lawyers. Furthermore, with respect to the small claims replevin actions, Hyndman's actions on behalf of his employer were specifically excluded from what would otherwise be considered the unauthorized practice of law under Wis. Stat. § 757.30.

non-lawyer, then those same acts would not constitute practicing law for a person, like Hyndman, whose license to practice law had previously been revoked or suspended.

¶ 13. Furthermore, as noted, the small claims procedure itself specifically permits non-lawyers to do what Hyndman did on behalf of his employer in small claims replevin actions. Wis. Stat. § 799.06(2). Similarly, we conclude that Hyndman's activities on behalf of his employer in the bankruptcy proceedings did not constitute the practice of law because these activities could be and frequently were, performed by non-lawyers. The testimony before the committee at the public hearing established that Hyndman did not hold himself out to be an attorney when performing those acts; rather he took pains to note that he was acting as a layperson. We agree that Hyndman's activities did not constitute practicing law.

¶ 14. Moreover, we observe that Hyndman's activities could be viewed as simply being "law related work for a commercial employer not itself engaged in the practice of law"—an exception recognized within SCR 22.26(2) itself. Hyndman's employer was a commercial enterprise in the business of leasing household items; it was not engaged in the practice of law. We determine that Hyndman's activities on behalf of his employer fell within this exception in SCR 22.26(2).

¶ 15. In sum, although we are greatly troubled by the seriousness of Hyndman's criminal activities leading to his felony conviction and prison sentence, we conclude that he has met his burden of demonstrating by clear, satisfactory, and convincing evidence that he has the moral character to practice law in this state, that his resumption of the practice of law will not be detrimental to the administration of justice or subver-

sive of the public interest, and that he has complied fully with all the terms of the order of revocation and with the requirements of SCR 22.26. We further conclude that Hyndman's activities on behalf of his employer in the 11 years since the revocation of his license, did not constitute the unauthorized practice of law within the proscription of SCR 22.26(2). Accordingly,

¶ 16. IT IS ORDERED the petition for the reinstatement of the license of Robert J. Hyndman to practice law in Wisconsin is granted and his license is reinstated effective the date of this order upon the condition that he comply with the current CLE requirements.[6]

¶ 17. JON P. WILCOX, J. (*dissenting*). I am concerned that the timing of this petition for reinstatement—that it arose during the transition between the old and the new lawyer regulation systems—has not allowed us to make an adequate consideration of the facts in this case. Most notably, I think there has been an insufficient inquiry into the circumstances of Hyndman's felony conviction. Without more information, the court's decision to reinstate Hyndman's license to practice law could set an inappropriate precedent for future cases. Under the circumstances of this particular case, I would find it more appropriate to assign the case to a referee for further investigation. For that reason, I dissent.

¶ 18. As the court points out, the timing of this petition was unusual. Per curiam op. at ¶ 3 n.1. The initial public hearing was held before a subcommittee of

---

[6] The Board of Bar Examiners recommended that this petition for reinstatement be granted having determined that Hyndman is in compliance with the applicable continuing legal education requirements.

the District 2 Professional Responsibility Committee ("the Committee") on August 2, 2000. The report of the Committee was received by the Office of Lawyer Regulation (OLR) on October 2, 2000. Changes in the lawyer regulation system had dissolved the Board of Attorneys Professional Responsibility (BAPR) on October 1, 2000. Because there had already been a public hearing, the case was not assigned to a referee, as would have been required under the present rules. *See* SCR 21.08 (2000). Instead, the case was sent to the OLR, and the director submitted to this court a report, which recommended reinstatement of Hyndman's license. However, because no referee was appointed, I think that some significant factors regarding Hyndman's fitness to practice law have not been adequately considered.

¶ 19. Most serious among these factors is Hyndman's felony conviction for solicitation to commit a felony, delivery of cocaine. The incident that gave rise to the conviction occurred in 1988 while Hyndman was a licensed attorney and involved a conspiracy to purchase approximately $17,000 worth of cocaine through one of his own clients. Hyndman was charged in 1988, but a judgment of conviction was not entered until March 26, 1991. Because the conviction was not yet final at the time of Hyndman's original disciplinary hearing, the charge, rightly, was not considered for the purposes of discipline. However, this court explicitly stated that the conviction could be considered at future disciplinary proceedings or when Hyndman sought reinstatement. *Disciplinary Proceedings Against Hyndman,* 149 Wis. 2d 487, 495–96, 439, N.W.2d 129 (1989).

¶ 20. Now that Hyndman has applied for reinstatement, it seems that our consideration of his felony conviction has slipped through the cracks. In the OLR Director's report, the only mention made of the convic-

tion is that "Petitioner showed sincere remorse for the totality of his behavior which led to his revocation and the subsequent criminal conviction" and that "Petitioner's . . . criminal behavior prior to his revocation was reprehensible. However Petitioner has demonstrated that he has addressed the problems (primarily alcoholism) that were present in his life at that time. . . ." The court, in my view, gives equally short shrift to the issue. In its opinion, the court notes its "grave concern about Hyndman's criminal activities and his felony drug conviction" and that a petitioner for reinstatement does not enjoy a "presumption of rehabilitation." Per curiam op. at ¶ 4. However, the court says no more about the conviction and goes on to conclude that Hyndman is a suitable candidate for reinstatement.

¶ 21. Nowhere does the court address the concerns raised by Milwaukee County Assistant District Attorney Jack Stoiber in his letter to the Committee. Specifically, Mr. Stoiber noted that because Hyndman's criminal activity involved a client, Hyndman may have violated his duty to avoid conflicts of interest under SCR 20:1.7, violated his duty to refrain from inappropriate business relationships with clients under SCR 20:1.8, and engaged in conduct that reflected poorly on his honesty, trustworthiness and fitness as a lawyer under SCR 20:8.4. I have similar concerns about these potential violations, and I think that a full inquiry into the issues is necessary before we issue a decision on whether or not to reinstate Hyndman's license. Thus, I would find that further investigation of the matters is warranted.

¶ 22. With that said, I recognize that Hyndman has made great strides in his personal life. He has paid all of his restitution, maintained productive employ-

ment, reestablished ties with his family and his community, and brought his substance abuse problems under control. When we have dealt with lawyers impaired by substance abuse problems in the past, we have recognized that substance abuse is a treatable problem that, with diligence and help, can be controlled.

¶ 23. My concern with this case, however, goes deeper than mere impairment. The crime that the court glosses over is not a minor one. Such a felony drug conviction would prevent Hyndman from joining the Armed Forces,[7] from becoming a police officer or a sheriff's deputy,[8] from owning a firearm,[9] and even from becoming a notary public.[10] The fact that the crime involved one of Hyndman's own clients adds to the seriousness of the offense. Still, the court holds today that he is fit to practice law and serve as an officer of the court. Without more to justify this court's lack of consideration of Hyndman's felony conviction, I am concerned that the court is setting a troubling precedent. For this reason, I think a further investigation is warranted, and that this petition should be assigned to a referee for careful consideration in accordance with the present rules.

¶ 24. For the foregoing reasons, I respectfully dissent.

---

[7] 10 U.S.C. § 504 (1994); Dep't of Defense Directive 1304.26, § E1.2.7.2 (Mar. 4, 1994).

[8] Wis. Admin. Code § LES 2.01 (1) (c) (Aug. 2001).

[9] 18 U.S.C. § 922(g) (1994 & Supp. 2000); Wis. Stat. § 941.29(1)(a) (1999–2000).

[10] 63 Op. Atty. Gen. Wis. 74, 75 (1974).

¶ 25. I am authorized to state that Justice N. PATRICK CROOKS joins in this dissent.