In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Christopher L. O'BYRNE, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Christopher L. O'BYRNE, Respondent.

Supreme Court

*No. 02–1374–D. Decided November 15, 2002.*

2002 WI 123

(Also reported in 653 N.W.2d 111.)

¶ 1. PER CURIAM.   We review the recommenda-

tion of the referee that Attorney Christopher L. O'Byrne's license to practice law in Wisconsin be revoked for professional misconduct. The referee also recommended that Attorney O'Byrne be required to make restitution to three clients and that he be required to pay the costs of the proceeding.

¶ 2. We determine that the seriousness of Attorney O'Byrne's professional misconduct warrants the revocation of his license to practice law in Wisconsin.

¶ 3. Attorney O'Byrne was admitted to practice law in Wisconsin in 1986 and practiced in Port Washington. In 1994 he consented to a public reprimand for misconduct consisting of engaging in conduct involving dishonesty and misrepresentation, failing to disclose facts necessary to correct a misapprehension, failing to fairly and fully disclose all facts and circumstances pertaining to an investigation, and failing to respond to a client's reasonable request for information. On April 3, 2001, this court indefinitely suspended Attorney O'Byrne's license to practice law, effective April 16, 2001, for his willful failure to cooperate with two Office of Lawyer Regulation (OLR) grievance investigations. On November 21, 2001, this court suspended Attorney O'Byrne's license for 60 days, effective December 26, 2001, for failing to act with reasonable diligence and promptness in a probate matter and failing to cooperate with the OLR investigation. *See In re Disciplinary Proceedings Against O'Byrne*, 2001 WI 121, 248 Wis. 2d 699, 635 N.W.2d 598.

¶ 4. On May 22, 2002, the OLR filed a complaint alleging misconduct with respect to Attorney O'Byrne's handling of matters for four separate clients. The first client retained Attorney O'Byrne regarding the purchase of a business. The purchase price for the business was $100,000. Ten thousand dollars of the purchase price was to be held in escrow to assure that the seller

complied with various sale provisions. At the closing, the seller was given a check for $90,000 and Attorney O'Byrne was given a check for $10,000 payable to the "McManus & O'Byrne Trust Account." Attorney O'Byrne deposited the check into a personal checking account jointly owned by him and his wife rather than into the trust account. By December 8, 1998, he had converted all of the escrowed funds to his own use.

¶ 5.    Within approximately one week of the closing the seller had failed to comply with the terms of the agreement and had also failed to turn over a vehicle that was included in the purchase. The client advised Attorney O'Byrne of these problems and Attorney O'Byrne said he would place a lien on the vehicle so it could not be sold. Attorney O'Byrne later falsely told the client that he had obtained a lien against the vehicle.

¶ 6.    The client asked Attorney O'Byrne about the $10,000 as frequently as three times a week. Attorney O'Byrne told the client the seller needed to "sign off" on the funds before they could be released and that Attorney O'Byrne was working on obtaining a release of the escrowed funds. In early June 2001 the client retained new counsel. New counsel secured a conditional authorization from the seller's attorney for release of the $10,000 thought to be held in Attorney O'Byrne's trust account. Attorney O'Byrne failed to respond to letters from the client's new counsel and never returned the $10,000. He also failed to cooperate with the OLR's investigation into the matter.

¶ 7.    The second claim of misconduct alleged in the OLR's complaint involved Attorney O'Byrne's handling of collection matters for a health care group. The health care group referred approximately 290 collection matters to Attorney O'Byrne, and he performed services on

about 95 of those referrals. Attorney O'Byrne was retained with the understanding that he would receive 25% of whatever he collected, regardless of whether the patient paid him or the health care group. He was to forward all funds he collected to the health care group and then bill them monthly for his services. He was not authorized to deduct any fees from the funds he collected.

¶ 8. The OLR's audit of Attorney O'Byrne's trust account revealed that he failed to turn over between $23,258.89 and $24,968.16 owed to the health care group. When the OLR asked Attorney O'Byrne to explain his handling of the funds, Attorney O'Byrne, through counsel, invoked the Fifth Amendment.

¶ 9. Attorney O'Byrne disbursed a trust account check to the health care group in payment of funds collected for them, but there were insufficient funds in the account to cover the check. Attorney O'Byrne subsequently deposited a check drawn on his personal account that allowed the check to clear. Attorney O'Byrne, through counsel, informed the OLR that the overdraft in his trust account was the result of an error in withdrawing funds from the trust account rather than his business account.

¶ 10. Attorney O'Byrne's counsel also provided the OLR "originals" of bank statements, cancelled checks and deposit slips for Attorney O'Byrne's trust account. The OLR had previously subpoenaed these records from the bank because of Attorney O'Byrne's failure to produce them. In comparing the subpoenaed checks with the "originals" produced by Attorney O'Byrne, the OLR discovered that four of the "original" checks, each payable to Attorney O'Byrne, had been altered.

11

¶ 11.  The third claim of misconduct alleged in the OLR's complaint involved a client who retained Attorney O'Byrne in March of 2000 to represent him regarding a Class E felony charge in Ozaukee county. The client wanted the charge to be reduced to a misdemeanor. During their initial meeting Attorney O'Byrne advised the client he did not expect any trouble getting the charge reduced. Attorney O'Byrne suggested that the client provide him with the funds to make restitution to the victim. Attorney O'Byrne said he could hold the restitution funds in his trust account and that it would be a sign of good faith when he began talking to the district attorney.

¶ 12.  On April 5, 2000, the client gave Attorney O'Byrne two checks. One check was for Attorney O'Byrne's legal fees. The other check, in the amount of $1850, was for restitution. Attorney O'Byrne deposited the $1850 restitution check in his trust account. Over the next two and one-half months Attorney O'Byrne issued checks from the trust account to himself and by June 19, 2000, the entire $1850 had been converted to Attorney O'Byrne.

¶ 13.  In September 2000 the client entered a no contest plea to the felony charge based on Attorney O'Byrne's representation that the district attorney had refused to discuss a reduction in the charge. When Attorney O'Byrne asked the district attorney to reduce the charge to a misdemeanor he never mentioned that he had received funds from the client to pay restitution to the victim. The district attorney first learned that the client had given Attorney O'Byrne funds to pay restitution after the client advised his probation officer of this fact. The district attorney said if she had known the restitution had been paid up front, she would have seriously reconsidered the offer she had made to resolve

the case. In November 2000 the client was convicted of a felony, based on his plea, and placed on three years' probation. He was also ordered to pay $1921, which included the $1850 restitution, plus costs, and was required to serve 30 days in jail. Attorney O'Byrne told the client to have his probation officer contact him about the restitution so that Attorney O'Byrne could forward the funds.

¶ 14.   In January 2001 the client informed his probation officer that Attorney O'Byrne had the money to pay the restitution. Attorney O'Byrne told the probation officer he would forward the restitution payment. The client eventually received a check from Attorney O'Byrne for the $1850, dated April 19, 2001, drawn on Attorney O'Byrne's law office account rather than his trust account. Although the check was originally returned for insufficient funds, the bank put it through a second time and the check cleared the next day. Attorney O'Byrne failed to respond to the OLR's request for information concerning the grievance filed by the client.

¶ 15.   The fourth incident of misconduct alleged in the OLR's complaint concerned Attorney O'Byrne's representation of a client who retained him to represent her regarding a visitation matter in a pending Ozaukee county case. The client gave Attorney O'Byrne a $500 money order to commence the representation. Attorney O'Byrne deposited the money order into a personal joint checking account belonging to him and his wife. On April 16, 2001, this court suspended Attorney O'Byrne's license for failing to cooperate with the OLR investigations. Attorney O'Byrne never performed any work for the client. The client requested that Attorney O'Byrne refund the $500 and he agreed to do so but never did.

■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■

¶ 16. Attorney O'Byrne did not file an answer to the OLR's complaint and never appeared in the matter. Lance S. Grady was appointed as referee. The OLR moved for default judgment. The referee issued a report granting the motion for default judgment.

¶ 17. The referee concluded that by depositing funds that were to be held in trust into personal accounts, Attorney O'Byrne violated SCR 20:1.15(a).[1] The referee also found that by converting to his own purposes $10,000 that he was supposed to hold in escrow for the first client, by misappropriating and

---

[1] SCR 20:1.15(a) provides:

(a) A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and third persons that is in the lawyer's possession in connection with a representation or when acting in a fiduciary capacity. Funds held in connection with a representation or in a fiduciary capacity include funds held as trustee, agent, guardian, personal representative of an estate, or otherwise. All funds of clients and third persons paid to a lawyer or law firm shall be deposited in one or more identifiable trust accounts as provided in paragraph (c). The trust account shall be maintained in a bank, savings bank, trust company, credit union, savings and loan association or other investment institution authorized to do business and located in Wisconsin. The trust account shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import. No funds belonging to the lawyer or law firm, except funds reasonably sufficient to pay or avoid imposition of account service charges, may be deposited in such an account. Unless the client otherwise directs in writing, securities in bearer form shall be kept by the attorney in a safe deposit box in a bank, savings bank, trust company, credit union, savings and loan association or other investment institution authorized to do business and located in Wisconsin. The safe deposit box shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import. Other property of a client or third person shall be identified as such and appropriately safeguarded. If a lawyer also licensed in another state is entrusted with funds or property in connection with an out-of-state representation, this provision shall not supersede the trust account rules of the other state.

14

failing to hold in trust funds that he had collected on behalf of the health care group, and by failing to hold in trust the $1850 which the third client gave him to pay as restitution, Attorney O'Byrne violated SCR 20:8.4(b).[2]

¶ 18. The referee further found that by misrepresenting to the first client that he could not release escrow money without obtaining the seller's consent and that he was attempting to obtain that consent when he actually had converted the client's funds; by misrepresenting to the OLR that overdrafts on his trust account were the result of an error in withdrawing funds from the trust account rather than his business account; by altering checks he provided to the OLR during the course of the investigation; and by failing to disclose to the district attorney during plea negotiations that the third client had given him funds to pay restitution because Attorney O'Byrne had converted those funds to his own use, Attorney O'Byrne violated SCR 20:8.4(c).[3]

¶ 19. The referee also concluded that by failing to return the $10,000 to the first client or the client's new attorney after the representation was terminated, and by failing to refund the $500 fee to the fourth client after performing no services for her, Attorney O'Byrne violated SCR 20:1.16(d).[4] The referee also concluded

---

[2] SCR 20:8.4(b) provides: "It is professional misconduct for a lawyer to: (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

[3] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to: (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[4] SCR 20:1.16(d) provides:

that by continuing to represent the third client after converting the funds the client had given him to pay restitution, thereby compromising the client's opportunity to obtain a better plea bargain rather than reveal his conversion of the client's funds, Attorney O'Byrne violated SCR 20:1.7(b).[5] The referee also found that by failing to promptly deliver the $1850 to either the client or the client's probation agent, Attorney O'Byrne violated SCR 20:1.15(b).[6] Finally, the referee found that by failing to respond to the OLR investigative requests

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

[5] SCR 20:1.7(b) provides:

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents in writing after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

[6] SCR 20:1.15(b) provides:

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled

16

regarding the grievances filed by his clients, Attorney O'Byrne violated SCR 22.03(6).[7]

¶ 20.   We adopt the referee's findings of fact and conclusions of law. Attorney O'Byrne's misconduct with respect to his handling of the four client matters, including converting nearly $34,000 of client funds to his own use, consists of very serious failings warranting the revocation of his license to practice law.

¶ 21.   IT IS ORDERED that the license of Christopher L. O'Byrne to practice law in Wisconsin is revoked effective the date of this order.

¶ 22.   IT IS FURTHER ORDERED that Christopher L. O'Byrne comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been revoked.

¶ 23.   IT IS FURTHER ORDERED that within 60 days of the date of this order Christopher L. O'Byrne make restitution to the first client in the amount of $10,000, to the health care group in the amount of $23,258.89, and to the fourth client in the amount of $500.

¶ 24.   IT IS FURTHER ORDERED that within 60 days of the date of this order Christopher L. O'Byrne pay to the Office of Lawyer Regulation the costs of this proceeding.

---

to receive and, upon request by the client or third person, shall render a full accounting regarding such property.

[7] SCR 22.03(6) provides: "In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

¶ 25. IT IS FURTHER ORDERED that restitution to Christopher L. O'Byrne's clients is to be paid prior to paying costs to the Office of Lawyer Regulation.