In the Matter of Disciplinary Proceedings Against
Gary R. George, Attorney at Law:

Office of Lawyer Regulation,
Complainant-Respondent,

v.

Gary R. George, Respondent-Appellant.

Supreme Court

*No. 2005AP1978–D. Oral argument December 13, 2007.
—Decided March 26, 2008.*

2008 WI 21

(Also reported in 746 N.W.2d 236.)

51

For the respondent-appellant there were briefs by *Richard J. Cayo* and *Halling & Cayo, S.C.,* Milwaukee; and *Mark Hazelbaker* and *Hazelbaker & Associates S.C.,* Madison, and oral argument by *Richard J. Cayo* and *Mark Hazelbaker.*

For complainant-respondent there was a brief and oral argument by *Thomas J. Basting, Sr.,* retained counsel, Madison.

¶ 1. PER CURIAM. Attorney Gary R. George appeals a referee's recommendation that his license to

practice law in Wisconsin be revoked for professional misconduct consisting of committing criminal acts that reflect adversely on his honesty, trustworthiness and fitness as a lawyer. The referee also recommends that Attorney George pay the costs of the disciplinary proceeding. The sole issue on appeal is the appropriate level of discipline.

¶ 2. We approve the referee's findings of fact and conclusions of law and we adopt them. We conclude that a lengthy suspension is the appropriate level of discipline in this proceeding, and we impose the costs of the proceeding.

¶ 3. Attorney George was admitted to the practice of law in Wisconsin in 1979. He has no prior disciplinary history. On April 1, 2004, this court summarily suspended Attorney George's license to practice law in Wisconsin pursuant to SCR 22.20(1)[1] upon notification that Attorney George had been convicted in federal court, on entry of a guilty plea, of one count of conspiracy to commit offenses against federal program funds in violation of 18 U.S.C. § 371.[2]

---

[1] SCR 22.20(1) provides: Summary license suspension on criminal conviction.

> (1) *Summary suspension.* Upon receiving satisfactory proof that an attorney has been found guilty or convicted of a serious crime, the supreme court may summarily suspend the attorney's license to practice law pending final disposition of a disciplinary proceeding, whether the finding of guilt or the conviction resulted from a plea of guilty or no contest or from a verdict after trial and regardless of the pendency of an appeal.

[2] Title 18 of the United States Code § 371 provides: Conspiracy to commit offense or to defraud United States

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more

¶ 4. His license to practice law remains under suspension.

¶ 5. Attorney George served in the Wisconsin Senate for 23 years. During that time, he developed a professional relationship with Milwaukee attorney Mark Sostarich (Sostarich), and Carl Gee (Gee), the former executive director of the Opportunities Industrialization Center of Greater Milwaukee ("OIC"), an entity that held contracts to administer Wisconsin's welfare-reform program, popularly known as W-2 (for "Wisconsin Works").[3]

¶ 6. Attorney George, Sostarich, Gee and others entered into business arrangements that eventually gave rise to federal conspiracy charges. In 2003 Attorney George was indicted on charges that he accepted kickbacks in exchange for exercising his political influence over federal grants as well as programs financed by state revenues.[4] *See United States v. George*, 403 F.3d

---

of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

[3] These contracts brought in about $40 million annually.

[4] More specifically, the indictment alleged that Attorney George conspired with Sostarich and others to commit offenses involving federal program funds under 18 U.S.C. § 666 and to commit mail and wire fraud offenses in violation of 18 U.S.C. §§ 1341, 1343 and 1346; conspired with Sostarich and others to corruptly provide Attorney George with kickbacks from legal fees paid by the Police Athletic League ("PAL"), a nonprofit subsidiary of the OIC in violation of 18 U.S.C. §§ 666(a)(1)(B), 1341 and 1346; knowingly and intentionally misapplied property of PAL by rigging the bid process for a $5 million construction project in Milwaukee in violation of 18 U.S.C. §§ 666(a)(1)(A)

470 (7th Cir. 2005). Attorney George pled guilty to the first count of the indictment pursuant to a plea agreement. The remaining charges were dismissed but read into the record. Attorney George was sentenced to 48 months' imprisonment and was ordered to pay $568,596.48 in restitution.[5]

¶ 7. We summarize the facts underlying the charge to which Attorney George pled guilty. Attorney George and Sostarich undertook joint legal representation of the OIC and various OIC subsidiaries with the OIC's knowledge and consent. The parties entered into a written fee agreement, whereby Sostarich served as the attorney of record.

¶ 8. Between approximately October 1997 and August 2002, the OIC paid a monthly retainer to Sostarich, usually in the amount of $5,834. Sostarich, in turn, would deposit the retainer check into his bank account and then write two checks—one to his law firm and one to Attorney George. The amount Attorney George received varied from four-fifths of the total monthly retainer ($4,667.20) to one-half of additional legal payments the OIC made to Sostarich. Attorney

and 2; corruptly solicited and accepted $2,500 from Sostarich intending to be rewarded in connection with a State of Wisconsin transaction in violation of 18 U.S.C. § 666(a)(1)(B); and knowingly conducted a financial transaction using the proceeds of specified unlawful activity in violation of 18 U.S.C. §§ 666, 1341, 1343, 1346 and 1956(a)(1)(B)(i).

[5] The Seventh Circuit Court of Appeals affirmed his conviction and sentence, but remanded with directions to review the original $613,746.36 restitution award. The decision after remand, reducing the restitution award to $568,596.48, was affirmed on appeal. *See United States v. George,* No. 03–CR–259, Memorandum Decision (E.D. Wis. May 3, 2006), *aff'd after remand, United States v. George,* 198 Fed. Appx. 552 (7th Cir. 2006).

George performed no legal work in exchange for this money; neither the OIC nor Sostarich filed tax documents showing how the monthly fee was allocated.

¶ 9. The OIC also "invested" $200,000 of an affiliate's money in a corporation controlled by Attorney George's family, whose sole asset was a television station in the Virgin Islands. The "investment" never appeared on the corporation's books. The federal court observed that "[t]he money seems to have gone straight to George's pocket, with the OIC receiving his goodwill and political patronage rather than an equity interest in a business." *United States v. Gee*, 432 F.3d 713, 714 (7th Cir. 2005). Attorney George eventually received over $400,000 in various payments from the OIC.[6] In addition, the indictment alleged and Attorney George has admitted that he used state employees to perform personal work for him, and that he failed to disclose the fees received from the OIC arrangement on his Statement of Economic Interests.

---

[6] Gee was convicted of conspiring with Attorney George and Sostarich to obtain OIC contracts corruptly and of causing the OIC to pay kickbacks to Attorney George, in violation of 18 U.S.C. §§ 666 and 371. Gee was sentenced to 24 months' imprisonment and ordered to pay restitution of some $473,000. *See United States v. Gee*, 432 F.3d at 714.

Sostarich was convicted, following entry of a plea, to one count of conspiracy to commit mail fraud in violation of 18 U.S.C. § 371. Sostarich was sentenced in federal court to three years probation, conditioned on 150 days of home confinement. Sostarich was also ordered to make restitution to an OIC subsidiary in the amount of $42,649 and to perform 75 hours of community service. Sostarich's license to practice law was summarily suspended following his conviction, and his license was ultimately suspended for 18 months. *In re Disciplinary Proceedings Against Sostarich*, 2005 WI 97, 282 Wis. 2d 712, 698 N.W.2d 711.

¶ 10. On August 2, 2005, the Office of Lawyer Regulation (OLR) filed a disciplinary complaint against Attorney George alleging that by virtue of his conviction in federal court he had violated SCR 20:8.4(b), which provides that it is professional misconduct to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

¶ 11. A hearing on the attorney disciplinary matter was conducted on April 20, 2006. On December 12, 2006, the referee, Gene B. Radcliffe, filed his report recommending revocation. This appeal followed. The Wisconsin Supreme Court conducted oral argument on December 13, 2007.

¶ 12. Attorney George does not challenge the referee's finding that his federal conviction established a violation of SCR 20:8.4(b). Therefore, the sole question before the court on appeal is the appropriate discipline for Attorney George's professional misconduct. The OLR acknowledged at oral argument that any discipline should be imposed retroactive to the date Attorney George's license to practice law was summarily suspended.

¶ 13. It is this court's responsibility to determine the appropriate discipline to be imposed for an attorney's misconduct. In making that determination, we are free to impose discipline more or less severe than that recommended by the referee. *In re Disciplinary Proceedings Against Elliott,* 133 Wis. 2d 110, 394 N.W.2d 313 (1986); *In re Disciplinary Proceedings Against Reitz,* 2005 WI 39, 279 Wis. 2d 550, 694 N.W.2d 894.

¶ 14. We consider the seriousness of the misconduct, the need to protect the public, courts and the legal

system from repetition of misconduct, the need to impress upon the attorney the seriousness of the misconduct, and the need to deter other attorneys from engaging in similar misconduct. *See In re Disciplinary Proceedings Against Arthur,* 2005 WI 40, 279 Wis. 2d 583, 694 N.W.2d 910.

¶ 15. Attorney George acknowledges the seriousness of his misconduct, but asserts that a lesser sanction than revocation is warranted. The crux of Attorney George's argument is that the federal court decisions overstate the nature of the conspiracy and, while he concedes it was wrong to use state employees for personal work and wrong to fail to disclose the payments he received on his Statement of Economic Interests, the payments he received from the OIC were fairly obtained. He maintains that he did not exert his influence improperly on behalf of the OIC. He maintains that the payments he received were for legitimate services rendered to the OIC. Despite Attorney George's protestations to the contrary, this characterization of the events was clearly not accepted by the referee who stated, "In spite of his arguments that he was convicted because of technicalities and the general coercive nature of the criminal . . . system and that he really did provide legal services to the entities for which he received kickbacks, *the record clearly indicates otherwise.*" (Emphasis added).

¶ 16. We decline to disturb the referee's factual finding on this point and note that it is fully consistent with Attorney George's statements made at his plea hearing, where the federal court described the allegations contained in count one of the indictment and asked, "Are those the facts to which you are pleading guilty here today as they—as those facts relate to you?" Attorney George responded, "Yes, your Honor."

58

¶ 17. Similarly, we are not persuaded by Attorney George's suggestion that his discipline should not be significantly more severe than that imposed on Sostarich. There is substantial record evidence that both Sostarich and Gee benefited far less than Attorney George from the scheme. Attorney George's effort to characterize his culpability as on par with that of Sostarich is simply not compelling.

¶ 18. Attorney George also suggests that the referee erroneously assumed that revocation is automatically warranted when an attorney has committed any serious felony. However, it does not appear the referee erroneously assumed that commission of a serious felony automatically requires revocation. In his report, the referee referenced section 5.11(a) of the ABA Standards for Imposing Lawyer Sanctions which states that disbarment is generally appropriate when:

> [A] lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; . . . or an attempt or conspiracy or solicitation of another to commit any of these offenses[.]

¶ 19. The referee stated, "In imposing discipline in these cases, most courts impose disbarment on lawyers who are convicted on serious felonies." The referee added that Section 5.21 of the ABA Standards for Imposing Lawyer Sanctions provides that "disbarment is generally appropriate when a lawyer in an official or governmental position, such as [Attorney George], knowingly misuses the position with intent to obtain a significant benefit or advantage for himself."

¶ 20. We are not persuaded that by these statements, the referee erroneously assumed revocation was the only sanction he could recommend to this court.

¶ 21. However, while we decline to accept Attorney George's characterization of the events giving rise to his conviction, neither are we persuaded that revocation is a necessary sanction in this instance.

¶ 22. In considering the appropriate discipline, we consider prior Wisconsin precedent, the ABA Standards for Imposing Lawyer Sanctions, the mitigating and aggravating circumstances involved in this matter, and the specific circumstances of Attorney George's misconduct.

■

¶ 23. Ultimately, each disciplinary case turns on its specific facts. *See, e.g., In re Disciplinary Proceedings Against O'Byrne,* 2002 WI 123, 257 Wis. 2d 8, 653 N.W.2d 111. We have considered the cases cited by both parties and commend counsel for providing the court with a thorough analysis of relevant case law. *See, e.g., In re Disciplinary Proceedings Against Burke,* 2007 WI 46, 300 Wis. 2d 198, 730 N.W.2d 651 (suspension); *In re Disciplinary Proceedings Against Chvala,* 2007 WI 47, 300 Wis. 2d 206, 730 N.W.2d 648 (suspension); *In re Disciplinary Proceedings Against Paulus,* 2004 WI 71, 272 Wis. 2d 143, 682 N.W.2d 326 (consensual revocation); *In re Disciplinary Proceedings Against Hausmann,* 2005 WI 131, 285 Wis. 2d 608, 699 N.W.2d 923 (suspension); *O'Byrne,* 2002 WI 123 (revocation); *In re Disciplinary Proceedings Against Kortsch,* 225 Wis. 2d 235, 591 N.W.2d 841 (1999) (revocation); *In re Disciplinary Proceedings Against Hinnawi,* 202 Wis. 2d 113, 549 N.W.2d 245 (1996) (revocation); *In re Disciplinary Proceedings Against Wright,* 180 Wis. 2d 492, 509

N.W.2d (1994) (revocation); *In re Disciplinary Proceedings Against Smith,* 145 Wis. 2d 632, 428 N.W.2d 547 (1988) (revocation).

¶ 24. Revocation is the most extreme sanction this court can impose upon an attorney who has violated the Rules of Professional Conduct for Attorneys. It is reserved for the most egregious cases of professional misconduct, cases where we conclude that the nature and extent of the misconduct renders an attorney wholly unfit to be licensed by this court to represent others in the legal system.

¶ 25. Revoking a lawyer's license to practice law does not, however, preclude that person from ever practicing law in Wisconsin again. One whose license has been revoked may seek reinstatement "at any time commencing five years after the effective date of the revocation." SCR 22.29(2).

¶ 26. In seeking a lesser sanction than revocation, Attorney George offered, as a mitigating factor, his lengthy public service, including 23 years in the Wisconsin Senate, and his involvement since the 1970s in Wisconsin Special Olympics and other charitable and professional works benefiting underprivileged youth.

¶ 27. At the oral argument on this matter, however, counsel for the OLR persuasively argued the other side of that same coin, emphasizing that Attorney George was not only acting as an attorney, but also as an elected official when he committed the misconduct at issue here. As such, Attorney George's misconduct not only involved dishonesty, it violated the public's trust and served to undermine the public's confidence in its elected officials.

¶ 28. This is a difficult case and one this court considered very seriously. We share the OLR's concerns

about the serious violation of public trust committed by Attorney George, and we agree that substantial discipline is warranted to address that misconduct. At the same time, we are mindful that our role is not to duplicate the punishment Attorney George has already received for his actions, which includes a felony conviction, a lengthy prison sentence, and a very substantial restitution obligation that must be paid.

¶ 29. Ultimately, we have concluded that while Attorney George's misconduct was, indeed, extremely serious, it does not warrant the harshest penalty of revocation. We are influenced by the fact that this is the only disciplinary complaint filed against Attorney George since he was admitted to practice law in Wisconsin some 29 years ago. We are influenced by Attorney George's public service to the citizens of Wisconsin. His service long preceded the events giving rise to this disciplinary matter. Ultimately, while we agree that Attorney George has committed serious misconduct, we are persuaded that his prospects for rehabilitation are real.

¶ 30. Therefore, we have concluded that a lengthy suspension is appropriate discipline for Attorney George's violation of SCR 20:8.4(b). Attorney George's license to practice law will be suspended for a period of four years and three months. This is, perhaps, the most lengthy suspension imposed by this court in an attorney disciplinary matter.

¶ 31. Consistent with our past practice in other cases involving criminal convictions, we make the suspension retroactive to the date on which Attorney George's license was summarily suspended. We further

conclude that Attorney George should be required to pay the costs of the proceeding which total $14,064.72 as of December 17, 2007.[7]

■

¶ 32. We emphasize, moreover, that a petition for reinstatement, whether it follows a suspension or a revocation, is not an automatic procedure. *See, e.g., Reinstatement of Eisenberg,* 206 Wis. 2d 264, 556 N.W.2d 749 (1996). In all cases of revocation or license suspension of six months or more, the individual's eligibility and fitness to practice law is carefully scrutinized, first by the OLR, then by a referee, and finally by this court. The person seeking reinstatement must demonstrate that he or she has the moral character to practice law, that his or her resumption of the practice of law will not be detrimental to the administration of justice or subversive of the public interest, and the person seeking reinstatement must also demonstrate compliance with various other conditions as set forth in the rules or by order of the court. *See, e.g.,* SCRs 22.29–22.33.

¶ 33. IT IS ORDERED that Gary R. George's license to practice law in Wisconsin is suspended for a period of four years and three months, retroactive to the date of his summary license suspension imposed April 1, 2004.

¶ 34. IT IS FURTHER ORDERED that, if he has not already done so, Gary R. George comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 35. IT IS FURTHER ORDERED that within 60 days of the date of this order Gary R. George pay to the

---

[7] An objection to the specific amount of costs is not presently before this court. *See* SCR 22.24.

Office of Lawyer Regulation the costs of this proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay those costs within that time, the license of Gary R. George to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 36. DAVID T. PROSSER, J., and LOUIS B. BUTLER, JR., J., did not participate.