In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Gary R. GEORGE, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant-Respondent,

v.

Gary R. GEORGE, Respondent-Appellant.

Supreme Court

*No. 2005AP1978–D. Submitted on briefs December 8, 2009.
—Decided September 30, 2010.*

2010 WI 116

(Also reported in 789 N.W.2d 577.)

333

¶ 1. PER CURIAM. We review the recommendation of the referee, James J. Winiarski, that Attorney Gary R. George's petition seeking the reinstatement of his license to practice law in Wisconsin be denied. Attorney George filed an appeal from the referee's report and recommendation pursuant to SCR 22.33,[1] requesting this court grant the petition for reinstatement. After consideration of the parties' briefs, the referee's report and the entire record, we conclude that Attorney George's petition for reinstatement should be granted. We also direct that the costs of the reinstatement proceeding, which total $9,702.01 as of December 18, 2009, be paid by Attorney George.

¶ 2. Attorney George was admitted to the State Bar of Wisconsin in 1979. He served in the Wisconsin Senate for 23 years. On April 1, 2004, this court summarily suspended Attorney George's license to practice law upon learning he had entered a guilty plea

[1] SCR 22.33 provides as follows: Review; appeal.

(1) The director or the petitioner may file in the supreme court an appeal from the referee's report within 20 days after the filing of the report.

(2) An appeal from the report of the referee is conducted under the rules governing civil appeals to the supreme court. The supreme court shall place the appeal on its first assignment of cases after the briefs are filed.

(3) If no appeal is timely filed, the supreme court shall review the referee's report, order reinstatement, with or without conditions, deny reinstatement, or order the parties to file briefs in the matter.

(4) If the supreme court denies a petition for reinstatement, the petitioner may again file a petition for reinstatement commencing nine months after the denial.

to one count of conspiracy to commit offenses involving federal program funds in violation of 18 U.S.C. § 371. *See United States v. George*, 403 F.3d 470 (7th Cir. 2005). Attorney George had not previously been disciplined for professional misconduct.

¶ 3. The order and memorandum in the federal court case stated Attorney George received approximately $270,000 in illegal kickbacks from another attorney for legal fees to that attorney as a result of Attorney George exercising his political influence over federal grants as well as programs financed by state revenues. In addition, Attorney George secured state construction contracts for a businessman as a reward for the businessman making cash payments to a business owned by Attorney George's family. Attorney George also used State of Wisconsin employees to conduct his personal business involving his private law practice. Attorney George was sentenced to 48 months in prison and three years of extended supervision. He was ordered to pay $568,596.48 in restitution. *See United States v. George*, No. 03–CR–259, Memorandum Decision (E.D. Wis. May 3, 2006), *aff'd after remand, United States v. George*, 198 Fed. Appx. 552 (7th Cir. 2006).[2]

¶ 4. On March 26, 2008, following a full disciplinary proceeding, this court suspended Attorney George's license to practice law for four years and three months, retroactive to April 1, 2004, the date of the summary suspension. *In re Disciplinary Proceedings Against George*, 2008 WI 21, 308 Wis. 2d 50, 746 N.W.2d 236.

---

[2] Attorney George successfully challenged this restitution order. On March 24, 2009, the federal court reduced Attorney George's restitution obligation to $327,278.48. The record in this disciplinary proceeding was supplemented to reflect this reduction.

¶ 5. On June 23, 2008, Attorney George filed a petition seeking reinstatement of his license to practice law. A public hearing on the reinstatement petition was held on December 8, 2008. Seven character witnesses testified in support of Attorney George's petition and Attorney George testified as well. The parties filed post-hearing memoranda. On February 2, 2009, the referee filed a report recommending denial of the petition. Attorney George filed a timely appeal from the referee's report and recommendation. The Office of Lawyer Regulation (OLR) opposes reinstatement. The matter is now before the court pursuant to SCR 22.33(2).

¶ 6. Supreme court rule 22.31(1) provides the standards to be met for reinstatement. Specifically, the petitioner must show by clear, satisfactory, and convincing evidence that he or she has the moral character to practice law, that his or her resumption of the practice of law will not be detrimental to the administration of justice or subversive of the public interest, and that he or she has complied with SCR 22.26 and the terms of the order of suspension. In addition to these requirements, SCRs 22.29(4)(a) to (4m) provide additional requirements that a petition for reinstatement must show. All of these additional requirements are effectively incorporated into SCR 22.31(1).

■■

¶ 7. When we review a referee's report and recommendation, we will adopt a referee's findings of fact unless they are clearly erroneous. Conclusions of law are reviewed de novo. *See In re Disciplinary Proceedings Against Eisenberg*, 2004 WI 14, ¶ 5, 269 Wis. 2d 43, 675 N.W.2d 747.

¶ 8. The referee made the following factual findings relevant to Attorney George's petition for reinstatement:

[1] [Attorney George] does desire the return of his law license.

[2] During the course of his suspension, [Attorney] George acted as a paid "consultant" for two business entities. His consulting activities included law related work and the giving of legal advice.

[3] [Attorney George] remains on federal supervised release following his prison term. His supervised release is currently scheduled to end in August, 2010. The terms of his supervised release include that he is not allowed to hold employment having fiduciary responsibilities without the consent of his probation officer. He is allowed to only maintain one checking account into which all income must be deposited and expenses paid. All other accounts must be disclosed to his probation officer. He is not allowed to dispose of any assets exceeding a fair market value of $500.00 without the approval of his probation officer. Subject to the discretion of his probation officer, [Attorney] George may be required to notify third parties of risks that may be occasioned by [Attorney] George's criminal record or personal history.

[4] [Attorney George] recently filed a motion in Federal Court asking that his supervised release be terminated or modified. The motion was denied. [Attorney George] intends to continue efforts to modify or end his supervised release.

[5] [Attorney George] believes his prosecution in Federal Court was politically motivated. He does not believe he did anything wrong. He pled guilty only to avoid the risk of greater penalties. He believes that the "truth" will ultimately come out and show he did nothing wrong.

[6] During the last year, while [Attorney George's] income has fluctuated, it appears that he has averaged approximately $8,000 per month in gross income.

338

[7] [Attorney George] has paid very little of the $568,596.48 in restitution ordered by the Federal Court. [Attorney George] continues to dispute the restitution and the precise remaining balance of restitution due.

[8] [Attorney George] has paid very little of the court ordered costs of his Wisconsin suspension proceeding, which amounted to $14,064.71. However, communications have occurred between OLR and [Attorney George], and [Attorney George] believes he has an agreement with OLR to pay $150 per month for now, but more in the future. OLR believes he can and should pay more.

[9] As a result of being imprisoned and having his law license suspended, [Attorney George] has been unable to pay all past debts, family obligations, current living expenses, Federal restitution, and the cost of his suspension proceeding. However, he should be paying more on a monthly basis towards costs and restitution.

[10] [Attorney George] has attended necessary courses and appears compliant with CLE requirements. However he must obtain and submit proof.

We adopt these findings of fact.

¶ 9. The referee concluded Attorney George had failed to meet his burden of proof under SCR 22.31. In reaching this conclusion the referee made specific conclusions of law and discussed the reasoning underlying those conclusions. The referee concluded Attorney George has not shown by clear, satisfactory, and convincing evidence that during his period of suspension, he has not engaged in law-related work in violation of SCR 22.26(2). He concluded Attorney George has not complied fully with the terms of the order of suspension and that his conduct since the suspension or revocation has not been exemplary and above reproach. The ref-

eree concluded further that Attorney George does not have a proper understanding of and attitude toward the standards that are imposed upon members of the bar, and that he has not shown he will act in conformity with such standards. The referee concluded Attorney George cannot safely be recommended to the legal profession, the courts, and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence, and in general to aid in the administration of justice as a member of the bar and as an officer of the courts. The referee concluded Attorney George has not complied fully with the requirements set forth in SCR 22.26. The referee concluded Attorney George has not shown by clear, satisfactory, and convincing evidence that he has the moral character to practice law in Wisconsin; that his resumption of the practice of law will not be detrimental to the administration of justice or subversive of the public interest; that his representations in the petition, including the representations required by SCRs 22.29(4)(a) to [(m)] and 22.29(5), are substantiated; and that he has complied fully with the terms of the order of suspension and with the requirements of SCR 22.26.

¶ 10. We consider these conclusions de novo. We begin by acknowledging that some of Attorney George's past conduct has been deeply flawed. He has been professionally disciplined and criminally prosecuted for that bad conduct. He has been less than forthcoming with information about his activities while under suspension. He has steadfastly maintained that he did nothing wrong and that his criminal prosecution was politically motivated. He appears to operate under the misapprehension that he is somehow entitled to reinstatement upon the expiration of his license suspen-

sion. Indeed, Attorney George's approach to this entire reinstatement proceeding has made it a more difficult and time-consuming inquiry than it might otherwise have been.

¶ 11. However, we focus on the specific question before us today: Whether Attorney George has demonstrated by clear, satisfactory, and convincing evidence that his license to practice law should be reinstated at this time. After careful review of the entire record, we conclude the answer to this question is, "Yes."

¶ 12. The referee concluded Attorney George did meet certain of the requirements necessary for reinstatement. There is no dispute Attorney George desires to have his license reinstated and that he has maintained competence and learning in the law by attendance at identified educational activities. We agree with these conclusions.

¶ 13. The referee commented that Attorney George could have done more to pay his restitution obligations in federal court and his costs due in the disciplinary proceeding in this court. However, the referee concluded Attorney George should not be denied reinstatement even though he has not yet fully paid his restitution obligations.

¶ 14. More specifically, the referee found that as "a result of being imprisoned and having his law license suspended, [Attorney George] has been unable to pay all past debts, family obligations, current living expenses, Federal restitution, and the cost of his suspension proceeding." The referee concluded Attorney George "should be paying more on a monthly basis toward costs and restitution." We agree with these findings, and we also agree with the referee's observa-

341

tion that Attorney George should not be denied reinstatement on the basis that those costs have not been paid. As to the restitution ordered in his federal case, as the referee found, Attorney George continues to challenge the remaining amount of restitution. Again, we agree with the referee's conclusion that his failure to pay more toward this restitution obligation should not preclude his reinstatement.[3]

¶ 15. The referee was particularly troubled by evidence that Attorney George may have practiced law while under suspension, may have failed to comply with the terms of the suspension order, has failed to acknowledge any wrongdoing, and remains on federal supervised release on terms that would seem to preclude the practice of law. We address these serious matters in turn.

¶ 16. The reinstatement process requires Attorney George to show by clear, satisfactory, and convincing evidence that during his period of suspension, he has not engaged in law-related work in violation of SCR 22.26(2), which provides:

> An attorney whose license to practice law is suspended or revoked or who is suspended from the practice of law may not engage in this state in the practice of law or in any law work activity customarily done by law students, law clerks, or other paralegal personnel, except that the attorney may engage in law related work in this state for a commercial employer itself not engaged in the practice of law.

---

[3] On April 22, 2010, Attorney George signed a stipulation for final order of garnishment acknowledging that the restitution balance on that date was $191,023.50. In this stipulation Attorney George reserved the right to challenge the calculation of the amount of restitution. On August 6, 2010, Attorney George filed a petition for writ of habeas corpus in which he seeks to vacate his conviction.

This is a critical inquiry because it implicates several related rule provisions relevant to reinstatement. Supreme court rule 22.29(4)(b) requires a petitioner demonstrate he has not practiced law during the period of suspension or revocation. Supreme court rule 22.29(4)(c) requires a showing that the petitioner has complied fully with the terms of the order of suspension or revocation. Supreme court rule 22.29(4)(h) requires a demonstration that the "petitioner has fully complied with the requirements set forth in SCR 22.26." Supreme court rule 22.31(1)(d) requires Attorney George demonstrate that he has complied fully with the terms of the order of suspension or revocation and with the requirements of SCR 22.26. Proof of compliance with SCR 22.26 "is a condition precedent to reinstatement of the attorney's license to practice law." *See* SCR 22.26(3).

¶ 17. During the course of his suspension, Attorney George acted as a paid consultant for two business entities. Attorney George worked as a consultant for Pennebaker Enterprises LLC, a business engaged in commercial roofing and sheet metal, for approximately one year during his suspension. As a consultant, Attorney George "help[ed] [Pennebaker Enterprises] with [its] insurance issues, worker's comp issues, stuff like that, or general HR matters." Attorney George was paid $5,000 per month for his services with Pennebaker Enterprises LLC.

¶ 18. Attorney George also has worked as a consultant for R.J. Harris and Associates, a marketing company, during his suspension. Attorney George apparently worked on diversity, personnel, and legislative issues on behalf of R.J. Harris and Associates' clients. Attorney George has been paid $3,000 a month for at least eight months of work during his suspension.

343

¶ 19. The referee was concerned about several aspects of Attorney George's activities while under suspension. In particular, the referee noted that the evidence Attorney George provided regarding his activities while under suspension was "not clear."

¶ 20. The referee ultimately concluded that Attorney George had violated SCR 22.26 by providing law-related work for more than one commercial employer, reasoning that the intent of SCR 22.26(2) "is to prohibit a suspended lawyer from engaging in law related work, as a consultant, or otherwise, for multiple employers, entities, and individuals." The referee commented that "[p]roviding law related work, as a consultant, for multiple employers or entities, circumvents the rule and amounts to the practice of law."

■■

¶ 21. We disagree with this conclusion. Supreme court rule 22.26(2) does not preclude a suspended attorney from engaging in law-related work on behalf of more than one employer.

¶ 22. With respect to the allegations that Attorney George engaged in the unauthorized practice of law, we agree that the details Attorney George provided in his petition for reinstatement regarding his law-related activities during his suspension were somewhat cursory, complicating our inquiry. That said, we conclude that Attorney George satisfied the requirements of SCR 22.26(2).

¶ 23. The referee expressed legitimate concern about Attorney George's failure to acknowledge wrongdoing. As the referee noted, Attorney George believes his prosecution in federal court was politically motivated:

> He does not believe he did anything wrong. He pled guilty only to avoid the risk of greater penalties. He

believes that the "truth" will ultimately come out and show he did nothing wrong.

What are the ramifications of Attorney George's belief? Should this preclude his reinstatement? The referee ultimately determined that he could not conclude that Attorney George has the proper understanding of legal standards or that he will act in conformity with the standards. The referee explained:

> Several times during the hearing, I asked [Attorney] George to address his current feelings on the conduct that led to his discipline. It was clear to me that he has difficulty expressing remorse for his conduct, given the fact that he does not feel he did anything wrong. [Attorney] George did indicate that his past problems were the result of his political career. He testified that those problems will not reoccur, given that he can no longer be an elected politician.

█

¶ 24. We respect the referee's insightful observations, but we reach a different conclusion based on the same facts. There is nothing in the supreme court rules that requires Attorney George to acknowledge the wrongfulness of his actions before reinstatement. The rules do require Attorney George to have a proper understanding of and attitude towards the standards imposed on members of the Wisconsin bar and to act in conformity with those standards if reinstated. We note that each of the seven witnesses who testified on Attorney George's behalf believes Attorney George would not engage in further misconduct in the future. All of the witnesses believe Attorney George to be honest and all stated they would also trust Attorney George with their future legal affairs. The record evidence shows Attorney George greatly regrets the embarrassment he has brought to his family and his family

name. Indeed, the referee acknowledged the evidence "strongly suggests that [Attorney] George will avoid further misconduct" albeit because "he does not wish to go to prison again or lose his license to practice law again, and not because he appreciates the wrongfulness of his previous misconduct."

¶ 25. We are reluctant to hold that an individual must explicitly admit wrongdoing to be reinstated. Attorney George has entered a guilty plea to criminal conduct and that fact is a matter of public record. He has been criminally sanctioned, incarcerated, and professionally disciplined for his offenses. The evidence supports a conclusion that Attorney George will not commit professional misconduct in the future. As such, we are persuaded that he has met his burden of showing that he has a proper understanding of and attitude toward the standards imposed on members of the Wisconsin bar, and that he will act in conformity with those standards.

¶ 26. The most troubling aspect of Attorney George's reinstatement petition for this court was the fact that Attorney George remained on federal supervised release with conditions that made it potentially difficult for him to resume the practice of law and comply with supreme court rules. The referee stated, "While the Supreme Court rules do not specifically address the issue of reinstatement of a lawyer who remains under Federal supervised release, conflict of interest, fiduciary, and confidentiality issues are apparent, given the current conditions of petitioner's supervised release."

¶ 27. We share the referee's concern that the terms of Attorney George's supervised release could constrain his ability to practice law. He was not allowed to hold employment having fiduciary responsibilities without the consent of his probation officer. He was

allowed to maintain only one checking account into which all income must be deposited and expenses paid. He was required to disclose all other accounts to his probation officer. He was not allowed to dispose of any assets exceeding a fair market value of $500 without the approval of his probation officer. Subject to the discretion of his probation officer, Attorney George might have been required to notify third parties of risks that may be occasioned by Attorney George's criminal record or personal history.

¶ 28. Attorney's George's period of supervised release ended on August 9, 2010. Therefore, the strict conditions imposed upon him are no longer potential impediments to his practice of law.

¶ 29. Attorney George is a high-profile individual whose criminal and professional misconduct has been well publicized. However, we must guard against a temptation to "re-try" the disciplinary case or revisit the criminal conduct for which Attorney George has been punished. At the same time, Attorney George is not "entitled to reinstatement" simply because the period of suspension has lapsed. *See In re Disciplinary Proceedings Against Hyndman,* 2002 WI 6, ¶ 4, 249 Wis. 2d 650, 638 N.W.2d 293.

¶ 30. Upon careful consideration of the entire record, we conclude Attorney George has met his burden of proof with respect to the elements necessary to justify reinstatement. We conclude Attorney George can safely be recommended to the legal profession, the courts, and the public as a person fit to be consulted by others as a lawyer.

¶ 31. In granting Attorney George's petition for reinstatement, we stress that he is not being held to a different or higher standard of conduct than other attorneys in this state. All attorneys licensed to practice

in Wisconsin are held to the highest standard of conduct, and we expect nothing less from Attorney George.

¶ 32. IT IS ORDERED that Gary R. George's license to practice law in Wisconsin is reinstated effective the date of this order.

¶ 33. IT IS FURTHER ORDERED that within 60 days of the date of this order, Gary R. George shall pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified, and absent a showing to this court of his inability to pay the costs within that time, the license of Gary R. George to practice law in Wisconsin shall be suspended until further order of the court.

¶ 34. DAVID T. PROSSER, J., did not participate.